**SO ORDERED.**

**SIGNED this 29 day of November, 2010.**

THIS ORDER HAS BEEN ENTERED ON THE DOCKET.
PLEASE SEE DOCKET FOR ENTRY DATE.

_____
John C. Cook
**UNITED STATES BANKRUPTCY JUDGE**

_____

**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE EASTERN DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **Pamela Ann Morgan** | ) | **No. 10-13804** |
| | ) | **Chapter 7** |
| **Debtor** | ) | |

**M E M O R A N D U M**

This case is before the court on (1) an objection filed by W. Grey Steed (the "Rivas Trustee"), as trustee of the bankruptcy estate of Luis H. Rivas, to the debtor's claim of a homestead exemption in certain real property, (2) an objection by Jerrold D. Farinash (the "Morgan Trustee"), as trustee of the bankruptcy estate of the debtor in this case, to the debtor's homestead exemption claim and to her claim of an exemption in certain garnished funds, and (3) motions by the debtor to avoid the Rivas Trustee's judicial lien to the extent that it impairs her exemptions.[1] For the reasons

---

[1] The debtor had originally sought to avoid the judicial lien of Ford Motor Credit Company LLC as well, but that request for relief was resolved by an agreed order.

stated below, the court will overrule the objections to the exemption claim and grant the debtor's motions in part.

**I.**

The parties agreed to submit these motions to the court for decision upon the record and the stipulated facts submitted by the parties. Those stipulated facts are as follows:

1. The Debtor instituted this voluntary chapter 7 [case] on July 3, 2010.

2. One of the assets of the estate is Debtor's residence at 6809 Pine Drive, Chattanooga, Tennessee.

3. For purposes of this proceeding, the value of the Debtor's residence is $175,000.

4. The Debtor maintains legal custody of her minor daughter. Luis Rivas is the father of this child.

5. Luis Rivas operated a massive Ponzi scheme in which he obtained funds from investors through fraud. The monies used to purchase the Debtor's residence were derived from the Ponzi scheme. The issue of the Debtor's involvement in or knowledge of Luis Rivas' wrongdoing has not been litigated.

6. The Debtor has claimed an exemption in her homestead in the amount of $25,000 pursuant to the provisions of T.C.A. §26-2-301.

7. The funds used by the Debtor to purchase the homestead were conveyed to her by Luis Rivas, who has pled guilty to a federal indictment based on his fraudulent Ponzi scheme. One count to which he has pled guilty related to the $225,000 transfer that he made to the Debtor on May 19, 2008, which the Debtor then used to purchase her home. The funds were derived from his fraudulent Ponzi scheme.

8. There has been no order of criminal forfeiture of the home, nor has there been any constructive trusts or equitable liens ordered against the home, nor have any been sought.[2]

---

[2] Although the stipulation states that no equitable liens on the on the home have been sought, the complaint that the Rivas Trustee filed against the debtor initiating Adversary Proceeding No. 08-1137 (*see* stipulated facts Nos. 15 and 18) did in fact seek "an equitable lien to be impressed upon the real property located at 6809 Pine Drive, Chattanooga, Tennessee 37421 in the amount of
(continued...)

9. Count 17 of the federal indictment alleged that Luis Rivas did, in his personal capacity, in contemplation of a case under Title 11 against himself, that is, an involuntary petition filed on May 15, 2008, and with the intent to defeat the provisions of Title 11, knowingly and fraudulently transfer[] and conceal[] property, as set forth below:

Count 17    Date May 19, 2008    Concealed and transferred amount $225,000.00.

10. Luis Rivas specifically pled guilty to Count 17, which involved the $225,000 transfer that he made to the debtor on May 19, 2008, which the Debtor then used to purchase her home approximately 20 days later. This transfer has been voided by the Court in a previous adversary proceeding as having been an unauthorized conveyance pursuant to 11 U.S.C. § 549.

11. Another asset of this estate consists of the proceeds of a garnishment judgment.

12. The Debtor has claimed an exemption in the proceeds of the garnishment in the amount of $4,314.00 pursuant to the provisions of T.C.A. § 26-2-103.

13. On December 24, 2007, Luis Rivas purchased a 2008 Volkswagen Toureg for $82,266.83 and gave it to the Debtor. The funds used by Rivas to purchase the 2008 Volkswagen Toureg came from misappropriated monies; i.e., the Ponzi scheme.

14. On June 11, 2008, after the filing of the [Rivas] bankruptcy petition, the Debtor traded in the Toureg for a 2007 Mazda RX8 and received cash for the trade-in totaling $25,100. Thereafter, in the same month, the Debtor wrecked the Mazda and received a $22,000 insurance check. The Court has found that the Toureg given by Rivas to the Debtor was a transfer of Rivas made with intent to defraud creditors pursuant to 11 U.S.C. § 548(1)(A) and avoided said transfer.

15. On September 25, 2008, the [Rivas] Trustee filed a complaint against Debtor to Avoid and Recover Fraudulent and Post-Petition transfers and for turnover. (Adversary Proceeding No. 08-1137).

---

[2] (...continued)
$225,000.00." Moreover, on June 17, 2010, the Rivas Trustee filed a motion to alter or amend the judgment entered against the debtor in which the Rivas Trustee sought the imposition of an equitable lien on the Pine Drive property based on the complaint initiating the proceeding. That motion, however, was withdrawn on June 24, 2010.

16. On September 22, 2009, Ford Motor Credit Company, LLC, recorded a judgment lien in the name of Pamela A. Rivas in the Hamilton County Register of Deeds Office in the amount of $14,000.[3]

17. On October 6, 2009, Trustee in the case of Luis H. Rivas (Case No. 08-12333), W. Grey Steed, filed a Lien Lis Pendens against the Debtor's real property pursuant to the provisions of T.C.A. § 20-3-101.

18. By Order of the United States Bankruptcy Court for the Eastern District of Tennessee[,] Southern Division, dated June 3, 2010, Trustee Steed was granted a monetary judgment against the Debtor in the amount of $563,188.33 of which $225,000 was the post-petition transfer used to purchase the house. (Adversary Proceeding Number 08-1137). Whether or not the Debtor was entitled to exemptions was not an issue in Adversary Proceeding Number 08-1137.

19. On June 15, 2010, Trustee Steed recorded a judgment lien in the Hamilton County Register of Deeds Office in the amount of the judgment.

20. Pursuant to the judgment, on June 24, 2010, the court issued a Writ of Execution in favor of Trustee Steed, directing the United States Marshal to levy on all real and personal property of the Debtor.

21. Pursuant to the Writ of Execution, on June 24, 2010, the United States Marshal garnished $17,673.50, which was being held for the benefit of the Debtor in the trust account of the Debtor's attorney, Thomas E. Ray.

22. On August 28, 2010, the Trustee in this case filed a notice to sell the debtor's real property.[4]

23. There are no consensual liens against the Debtor's property.

---

[3] It appears that the parties rounded off the amount of the judgment, as the document a copy of which is attached as Exhibit 1 to the Motion to Avoid Judgment Liens filed by the debtor on August 6, 2010, reflects a judgment in the amount of $13,693.24.

[4] The notice was actually filed on July 21, 2010, but it was withdrawn on August 9, 2010, and a new notice was filed on September 27, 2010. A month later, the court authorized the Morgan Trustee to sell the property at auction.

## II.

Section 541 of the Bankruptcy Code provides that, when a debtor commences a bankruptcy case by the filing of a bankruptcy petition, a bankruptcy estate is created which is comprised of all the debtor's property. However, under § 522(b)(1) of the Code, a debtor may exempt certain property from the debtor's bankruptcy estate subject to any nonavoidable liens or security interests in the property. Section 522(b) also states that a debtor may choose between the federal exemptions permitted under § 522(d) of the Code or the exemptions permitted under state law, unless the state has elected to provide that a debtor must use only the state exemptions in exempting property from the bankruptcy estate. Pursuant to Section 26-2-112 of the Tennessee Code Annotated, Tennessee has elected that its exemptions, rather than the federal exemptions, should be applied in bankruptcy cases. Consequently, the Bankruptcy Code requires that a debtor who is a resident of Tennessee use the Tennessee exemptions in exempting property from the bankruptcy estate. In this case, the debtor seeks to exempt from her bankruptcy estate $25,000 of the value of the Pine Drive property pursuant to the homestead exemption provided in Section 26-2-301 of the Tennessee Code Annotated.

Initially, it is important to focus on the narrow issue that is before the court, namely, whether under the Bankruptcy Code the debtor may exempt from her bankruptcy estate property that serves as the debtor's homestead under state law. Exempting the property will remove it from the bankruptcy estate, which is to be distributed to her general creditors. The thrust of the objections to the debtor's homestead exemption is the contention that the exemption should be disallowed on the ground that the funds used to purchase the property came from funds that Luis Rivas fraudulently obtained through his Ponzi scheme and fraudulently transferred to the debtor with intent to defeat the provisions of Title 11 (bankruptcy fraud). There has been no showing that the debtor herself was

involved in or had knowledge of Mr. Rivas's wrongdoing, and there has been no showing that the debtor has been guilty of any fraud, bad faith, or concealment in connection with her bankruptcy case. Rather, the objectors argue that, because the funds transferred to the debtor were derived from criminal activity, the debtor should not be allowed a homestead exemption in the home she purchased with the funds.

The Rivas Trustee relies on *Preston v. Moore*, 180 S.W. 320 (Tenn. 1915), as support for his contention that one may not claim misappropriated funds as exempt under Tennessee law. In that case, an employee embezzled funds and used them to buy property upon which he had built a house. The court held that, if funds are held in constructive trust and are traceable to the real property, the constructive trust prevails over the homestead exemption. Likewise, in *McConnell v. Henochsberg*, 11 Tenn. App. 176 (1930), also cited by the Rivas Trustee, an employee of a bank embezzled funds and then used the funds to buy a life insurance policy. The court impressed a constructive trust on the life insurance policy in favor of the bank's receiver.

While the *Preston* case may have supported the Rivas Trustee's position had the homestead exemption been asserted in response to an attempt by him to foreclose on his judicial lien prior to the debtor's bankruptcy filing, and while *McConnell* may have supported the Rivas Trustee in his attempt to impress a constructive trust or obtain an equitable lien on the debtor's real property, no constructive trust or equitable lien had been imposed or recognized at the time the debtor filed her bankruptcy petition. Thus, when the debtor filed her bankruptcy petition, the Pine Drive property came into her bankruptcy estate, subject to the judgment liens of the Rivas Trustee and FMCC. Again, the question now is whether the debtor should be allowed a homestead exemption in that property pursuant to § 522(b) of the Code that is excluded from her bankruptcy estate.

At first glance, it may seem inequitable to allow the debtor to exempt from her bankruptcy estate a homestead exemption in property that was purchased with funds that Luis Rivas obtained by fraud and transferred to the debtor with intent to defeat the provisions of Title 11 of the Bankruptcy Code. Ostensibly, as between the Rivas Trustee and the debtor, the equities may well favor the former. However, the issue presented by the objections to the debtor's homestead exemption is not a balancing of the equities between the Rivas Trustee and the debtor. Rather, the objections seek to invalidate the exemption claim for the benefit of *all* of the debtor's creditors, not just the Rivas Trustee.

The problem with the objectors' position is that nothing in the record shows that the debtor's creditors as a group could object to the debtor's homestead exemption based on a constructive trust or equitable lien argument. It is only the Rivas Trustee who could maintain such an argument. In bankruptcy, when a debtor seeks to exempt property from the bankruptcy estate, "'the only question which concerns the court of bankruptcy is whether the debtor is entitled to his exemption as against general creditors; and, if such is the case, the claim cannot be denied because there are some creditors as against whom the claim of exemption could not be sustained.'" *Bush v. Shepherd,* 205 P.2d 842, 845 (Ore. 1949) (quoting 8 C.J.S. *Bankruptcy* § 502), *overruled on other grounds by Fleischhauer v. Bilstad*, 379 P.2d 880 (1963); *accord*, *e.g.*, *In re Sokatch*, 208 F. Supp. 789, 790 (E.D.N.Y. 1962); *In re Vonhee*, 238 F. 422, 428 (W.D. Wash. 1916); *In re Brumbaugh*, 128 F. 971, 972 (D. Pa. 1904) (citing *Lockwood v. Exch. Bank*, 190 U.S. 294 (1903)).

While the foregoing cases were decided under the former Bankruptcy Act and their precise holdings have in large part been superseded by the Bankruptcy Code, the distinction they make between a bankruptcy court disallowing an exemption as for the benefit of the creditors generally,

on the one hand, and a state court precluding the debtor from asserting an exemption against a particular creditor, on the other, remains a sound one. For example, the distinction was made in *In re Ballard,* 115 B.R. 190 (Bankr. D. Minn. 1990), in which the debtors had converted a creditor's collateral prepetition and used a portion of the proceeds to buy assets that were claimed exempt in their chapter 7 case. The creditor obtained a judgment declaring the debt owed by the debtors to the creditor nondischargeable predicated upon the prepetition conversion. The creditor then argued that the debtors' exemption claims in the property that was purchased from proceeds of the converted collateral should be disallowed. There was no assertion that the debtors committed any fraud, misrepresentation, or defalcation in connection with their bankruptcy case.

The court rejected the argument that the conversion warranted the disallowance of the exemptions, because –

> that was a two-party matter, which did not involve fraud or defalcation against general creditors, or similar conduct in connection with the bankruptcy case. Exemptions are scrutinized in light of their impact upon a debtor's estate. They are appropriately disallowed in providing a remedy to the estate, for wrongful conduct or overreaching by a debtor that otherwise prejudices the estate or its general creditors. Here, the Debtors' pre-petition conduct did not prejudice their bankruptcy estate. Indeed, the property claimed exempt is either theirs through statutory exemption entitlement, or it belongs to FCS as the traced proceeds of its wrongfully converted collateral. In either case, the estate has no claim on the property.

*Id.* at 191. Similarly, in this case the debtor's estate has no claim on the property that the debtor seeks to exempt from her estate using the homestead exemption. The two-party dispute between the Rivas Trustee and the debtor is not a legitimate basis for invaliding the debtor's exemption claim vis-à-vis all her creditors. Accordingly, the court will overrule the objections to the homestead exemption claim.

## III.

The Morgan Trustee also objects to the debtor's exemption claim to the garnishment funds that were seized from the debtor by the Rivas Trustee shortly before the debtor filed her bankruptcy petition. The trustee contends that he may avoid the transfer of the funds from the debtor to the Rivas Trustee and preserve the avoided transfer for the benefit of the estate. He asserts that his rights would thus prevail over the debtor's exemption claim in the funds.

The Morgan Trustee, however, overlooks § 522(g) of the Bankruptcy Code, which provides that a debtor may exempt property recovered by the trustee "[n]otwithstanding sections 550 and 551 of this title" if the transfer was involuntary and was not concealed by the debtor. Because the seizure of the garnishment proceeds constituted an involuntary transfer that the debtor did not conceal, even if the Morgan Trustee succeeds in avoiding the transfer, the debtor may exempt the garnishment proceeds if she could have done so in the absence of the transfer. And that is so "notwithstanding" the preservation of avoided transfers by § 551. Accordingly, the Morgan Trustee's objection to the debtor's exemption claim in the garnishment proceeds will be overruled since there was no other basis asserted for denying the claim.

## IV.

The debtor seeks to avoid the Rivas Trustee's judicial lien on the debtor's real property pursuant to § 522(f)(1)(A), which provides, in pertinent part:

> Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is . . . a judicial lien, other than a judicial lien that secures a debt of a kind that is specified in section 523(a)(5).

Paragraph (2) of § 522(f) goes on prescribe a formula for determining when a lien "impairs" an exemption:

>    (A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—
>
>    (i) the lien;
>
>    (ii) all other liens on the property; and
>
>    (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;
>
> exceeds the value that the debtor's interest in the property would have in the absence of any liens.
>
>    (B) In the case of a property subject to more than 1 lien, a lien that has been avoided shall not be considered in making the calculation under subparagraph (A) with respect to other liens.

The court must apply the formula first to the most junior lien, that of the Rivas Trustee. *Bank of Am. Nat'l Trust & Sav. Ass'n v. Hanger (In re Hanger)*, 217 B.R. 592, 595 (B.A.P. 9th Cir. 1997), *aff'd*, 196 F.3d 1292 (9th Cir. 1999); *In re Ware*, 274 B.R. 206, 207 n.2 (Bankr. D.S.C. 2001); *In re Pray*, 242 B.R. 205, 208 (Bankr. D. Mass. 1999). The amount of the lien is $563,188.33 (plus interest accruing on the judgment). The only other lien on the property is the judicial lien of FMCC, which is in the amount of $13,693.24 (plus interest accruing on the judgment). The exemption amount is $25,000.00. Thus, the sum of the liens and the exemption is $601,881.57 (plus interest on the judgments). The parties have stipulated that the real property has a value of $175,000.00. The sum of the liens and the exemption exceed that value by $426,881.57 (plus interest on the judgments).

Accordingly, the exemption is impaired to the extent of $426,881.57 (plus interest on the judgments) and the Rivas Trustee's lien is avoidable to that extent.[5]

The debtor also seeks to avoid the Rivas Trustee's judicial lien on the funds seized by the Rivas Trustee pursuant to a writ of execution in aid of his judgment. The debtor seeks to avoid the lien pursuant to § 522(f) to the extent of $4,314.00, which is the amount she has claimed as exempt. However, a debtor may only exempt property of the estate, 11 U.S.C. § 522(b)(1), and the seized funds are not property of the estate. *See*, *e.g.*, *Jackson v. K.A.S. Enters., Inc. (In re Jackson)*, 260 B.R. 473, 478-79 (Bankr. E.D. Mo. 2001); *Lord v. Carragher (In re Lord)*, 270 B.R. 787, 795 (Bankr. M.D. Ga. 1998). Accordingly, the court will deny this motion without prejudice to the debtor's right to file another motion to avoid the lien in the event that the transfer of the funds to the Rivas Trustee is avoided by the Morgan Trustee or by the debtor.

## V.

For the foregoing reasons, the court will enter a separate order overruling the Morgan Trustee's and the Rivas Trustee's objections to the debtor's exemption claims. The court will grant the debtor's motion to avoid the Rivas Trustee's judicial lien on her real property except to the extent that the sale proceeds exceed the exemption amount plus the amount of FMCC's lien. The court will deny the debtor's motion to avoid the Rivas Trustee's judicial lien on the seized funds without prejudice to the debtor's right to seek to avoid the lien to the extent that the funds are brought into the estate.

###

---

[5] The court need not address FMCC's lien because, as the parties' agreed order recognizes, that lien does not impair the homestead exemption and is not avoidable so long as the property is sold for enough to pay the exemption and satisfy FMCC's lien.